**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-426** |
| **JEFFREY GAZZARA** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant, Dr. Jeffrey Gazzara, has admitted to participating in a scheme to make false certifications in medical records concerning the need for laboratory testing, and use these laboratory orders to induce Medicare payments for non-medically necessary and/or inappropriate laboratory tests. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 24 to 30 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

§ 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. <u>BACKGROUND</u>

On November 2, 2023, the defendant appeared before this Court and, pursuant to a written plea agreement, pled guilty to an information charging one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. During his plea colloquy, the defendant admitted that while employed to perform telehealth services for Big Easy Bad Dog ("BEBD"), he participated in a scheme to induce fraudulent Medicare reimbursement payments by falsifying medical records and ordering medically unnecessary and improper genetic testing for patients. The defendant admitted to participating in this scheme from at least February 2020 through at least November 2021, resulting in a total of $861,042.84 in Medicare payments on 1,297 fraudulent Medicare claims.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is a term of imprisonment of five years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100.

### B. Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| | |
|---|---|
| Base offense level | 6 |
| Loss of between $550,000 and $1.5 million | 14 |
| Abuse of public trust | +2 |
| Adjusted offense level | 22 |
| Zero Point Offender | -2 |
| Acceptance of responsibility | -2 |
| Timely notification of intent to plead guilty | -1 |
| Total offense level | 17 |

PSR ¶¶ 20-30. The Government agrees with this calculation. The defense has not objected to the calculation. The defendant is a Zero-Point offender. PSR ¶ 27. The resulting sentencing guideline range is 24 to 30 months. PSR ¶68.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original).

"Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment.**

The defendant's offense – defrauding Medicare, a federal health insurance program primarily for people age 65 or older, as well as younger individuals with specific disabilities or conditions, out of hundreds of thousands of dollars – is very serious. The defendant is a graduate of the University of Pennsylvania and the Philadelphia College of Osteopathic Medicine. PSR ¶ 58. The gravity of the defendant's actions are compounded by the fact that he was a licensed physician at the time of this criminal conduct (PSR ¶ 57), and thus owed his patients a duty of care and occupied a position of trust as to the Medicare program. He violated not only the law, but this duty to his patients and Medicare when ordering these unnecessary and inappropriate

tests. Moreover, the defendant's fraudulent claim submissions drained funds from an already financially strained Medicare system – improperly diverting funds meant for the most vulnerable members of our populations to BEBD, and in turn, the defendant. His crime therefore falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence.

The defendant's history and characteristics are mixed. The defendant has a strong family support system, has sources of financial support – both his own and from family, is a graduate of an Ivy League undergraduate institution, has a medical degree in Osteopathic Medicine, and was a licensed physician. PSR ¶¶ 39-40, 44, 58. He also has no criminal history prior to his arrest for the present offense. PSR ¶ 33. Based on the foregoing, the defendant had the skills and opportunities to lead a productive life as a contributing memory of society. However, the defendant has explained how his visual impairment created substantial professional and personal challenges, including negatively affecting career prospects. PSR ¶¶ 48-50, 56-58. The defendant has identified his professional challenges as the driving force behind his decision to seek employment with BEBD, though the defendant does not go so far as to blame his visual impairment on his decision to engage in fraudulent Medicare billing.

Moreover, the defendant's compensation while employed with BEBD was substantial. Specifically, the defendant identified being paid $50 per patient while seeing 20-30 patients per day, with a $4,000 per month additional payment while a medical director for BEBD. PSR ¶ 61. Based upon these numbers, the defendant was likely making at least $300,000 before taxes per year while employed as a medical director at BEBD, and today claims to have a net worth of $444,300. PSR ¶¶ 61, 63. The defendant's finances support that the defendant was motivated, at

least in part, by a desire for financial gain, rather than purely out of need or desperation. The defendant's history and characteristics, while complicated, therefore still support the recommended term of imprisonment "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). There is substantial restitution due in this case in the amount of $861,042.84. A guideline sentence will be sufficient to accomplish the goals of Section 3553, while ensuring the defendant is able to quickly begin seeking employment to allow him to meaningfully begin repayment of this restitution amount. § 3553(a)(7).

**B. <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of

supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least two years is warranted. As explained above, the defendant faces substantial, ongoing personal and professional challenges moving forward. In addition to employment obstacles resulting from his visual impairment, the defendant will have to navigate obtaining legitimate employment with a federal conviction. Close supervision following completion of any sentence of incarceration is warranted to aid his reentry to society, especially amid the anticipated obstacles faced by the defendant, and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a guideline sentence is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Meghan Claiborne Bisio*
MEGHAN CLAIBORNE BISIO
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Michael Diamondstein, Esq.
mjd@michaeldiamondstein.com
*Counsel for defendant Jeffrey Gazzara*

*/s Meghan Claiborne Bisio*
MEGHAN CLAIBORNE BISIO
Assistant United States Attorney

DATED: September 30, 2026.